AUG 4 2026 PM 12:18
FILED - USDC - FLMD - TPA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BRANDEN WABE,
Plaintiff,

v.

**EQUIFAX INFORMATION SERVICES LLC,**

**and**

**TRANSUNION LLC,**

**Defendants.**

Case No.: __8:26-CV-2255-MSS-SPF__

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, appearing pro se, brings this action against Defendants Equifax
Information Services LLC ("Equifax") and TransUnion LLC ("TransUnion")
arising from disputes concerning information maintained and reported in
Plaintiff's consumer files. Plaintiff alleges as follows:

## INTRODUCTION

1. This action concerns information appearing in Plaintiff's consumer reports
   maintained by Defendants Equifax and TransUnion, including account
   information, collection account information, personal identifying information,
   credit inquiries, and information relating to authorization or permissible purpose.

IFP



1

2. Plaintiff submitted written disputes to Defendants concerning information appearing in his consumer reports. Plaintiff's disputes identified the information being challenged, provided explanations regarding the basis of the disputes, and included supporting documentation and identification materials.

3. Plaintiff's disputes were submitted to Defendants through multiple dispute rounds beginning in March 2026 and continuing through July 2026. The disputes concerned specific categories of information appearing within Plaintiff's consumer files, including account reporting, collection reporting, personal identifying information, credit inquiries, and authorization-related information.

4. Defendants maintain records relating to the receipt, processing, review, and resolution of consumer disputes submitted to them. These records include dispute intake records, Automated Consumer Dispute Verification ("ACDV") forms, e-OSCAR transmissions, communications with furnishers, internal notes, verification responses, investigation records, audit records, policies, procedures, and electronically stored information.

5. The records maintained by Defendants contain information concerning the steps taken after receipt of Plaintiff's disputes, including the information transmitted to furnishers, the responses received, the materials reviewed, the procedures applied, and the basis for any determination concerning disputed information.

6. These records are maintained by Defendants in the ordinary course of business and are within Defendants' possession, custody, and control. Plaintiff seeks discovery of these materials because they contain information necessary to determine the handling and disposition of Plaintiff's disputes.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

8. This Court also has jurisdiction pursuant to 15 U.S.C. § 1681p, which authorizes an action to enforce liability under the Fair Credit Reporting Act in an appropriate United States district court.

9. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district, Plaintiff resides within this judicial district, and Defendants maintained, communicated, and reported the disputed consumer information concerning Plaintiff within this judicial district.

10. The Tampa Division is the appropriate division because Plaintiff resides in Pinellas County, Florida, and the injuries resulting from Defendants' alleged conduct were suffered within the Tampa Division.

## PARTIES

11. Plaintiff is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

12. Defendant Equifax Information Services LLC is a consumer reporting agency as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f), and maintains consumer information concerning Plaintiff.

13. Defendant TransUnion LLC is a consumer reporting agency as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f), and maintains consumer information concerning Plaintiff.

## FACTUAL ALLEGATIONS

14. At various times relevant to this action, Plaintiff reviewed consumer report information maintained by Defendants.

15. Plaintiff identified information appearing within his consumer files that Plaintiff believed was inaccurate, incomplete, misleading, unauthorized, or not capable of verification.

16. Among the information disputed by Plaintiff was information relating to Fairwinds account number 748035XX.

17. Plaintiff disputed the reporting associated with the Fairwinds account and notified Defendants that the information required review and verification.

18. Plaintiff also disputed information relating to BMW account number 100433.

19. Plaintiff contends that the BMW account had been paid in full, but the account information appearing within his consumer reports reflected a repossession status.

20. Plaintiff disputed the accuracy of that reporting and notified Defendants of the discrepancy between the account history known to Plaintiff and the information appearing in his consumer reports.

21. Plaintiff requested that Defendants review the disputed information and provided supporting information in connection with his disputes.

22. On July 21, 2026, a written attempt to resolve this dispute was sent via UPS to both defendants. The packages were delivered on July 23, 2026, providing both defendants until July 30, 2026, to resolve the matter outside of court. TransUnion responded by stating, 'It's been three days since we received your dispute. We've contacted the creditor(s) and are waiting for their response. We'll continue to keep you updated on the status.' Equifax did not provide any response.

## PLAINTIFF'S DISPUTE HISTORY WITH EQUIFAX AND TRANSUNION

23. Plaintiff submitted multiple documented dispute rounds to Equifax and TransUnion beginning March 2026 and continuing through July 2026.

24. The dispute submissions included written letters, identification documents, supporting documentation, explanations of disputed information, and requests concerning information appearing within Plaintiff's consumer files.

25. On March 17, 2026, written accuracy and factual-dispute letters were prepared for both Equifax and TransUnion concerning information appearing in Plaintiff's consumer reports.

4

26. The dispute portal identified the Equifax submission as an "R1: Accuracy/Factual Dispute" and identified a corresponding TransUnion submission using the same accuracy and factual-dispute designation.

27. Separate collection-account dispute letters were also prepared for Equifax and TransUnion under the designation "R1 Collection (CRA)."

28. At approximately 11:17 a.m. on March 17, 2026, multiple dispute letters accompanied by identification documents were recorded as mailed to Equifax and TransUnion.

29. The March 17, 2026 submissions notified Defendants that Plaintiff was disputing information appearing within his respective consumer files and requested review of the disputed information.

30. On April 15, 2026, Plaintiff obtained or caused an updated credit report to be imported for review following the March 17, 2026 dispute submissions. The dispute portal reflected updated dispute results and generated a new action plan.

31. On or about the same date, Plaintiff updated disputed personal-identification information, including information relating to his date of birth and current address.

32. On April 15, 2026, additional dispute letters were prepared for Equifax and TransUnion concerning collection information appearing within Plaintiff's consumer reports.

33. The dispute portal identified the Equifax and TransUnion submissions as "R1 Collection (CRA)" disputes. The portal also reflected an Equifax "R1 Consent" dispute and a corresponding TransUnion consent-related dispute.

34. Plaintiff provided additional documentation in connection with the April 15, 2026 dispute round, including proof-of-address documentation.

35. At approximately 6:38 p.m. on April 15, 2026, multiple dispute letters accompanied by identification documents were recorded as mailed to Equifax and TransUnion.

36. The April 15, 2026 dispute submissions concerned information appearing within Plaintiff's consumer files and provided additional information regarding the items Plaintiff identified for review.

37. On May 18, 2026, Plaintiff obtained or caused another updated credit report to be imported for review. The dispute portal generated a new action plan and reflected updates concerning disputed names, dates of birth, dispute reasons, and dispute instructions.

38. On May 18, 2026, Plaintiff prepared additional dispute letters directed to Equifax and TransUnion concerning personal-identification information, credit inquiries, and information for which Plaintiff disputed the existence of consent or permissible authorization.

39. The Equifax dispute submissions were identified as "Personal Information Dispute," "R2 Inquiry Removal," and "R2 Consent."

40. The TransUnion dispute submissions were identified as "Personal Information Dispute," "R2 Inquiry Removal," and "R2 Consent."

41. At approximately 3:18 p.m. and 3:19 p.m. on May 18, 2026, multiple dispute letters accompanied by identification documents were recorded as mailed to Equifax and TransUnion.

42. The May 18, 2026 submissions provided Defendants with additional information concerning Plaintiff's disputes involving personal information, inquiries, and authorization-related issues.

43. On June 15, 2026, Plaintiff obtained or caused another updated credit report to be imported and reviewed. The dispute portal reflected updated dispute results, generated a progress report and action plan, and reflected updates concerning disputed account information.

44. On June 15, 2026, additional dispute letters were prepared for Equifax and TransUnion concerning disputed accounts, personal-identification information, and credit inquiries.

45. The Equifax dispute submissions were identified as "R1: EQ," "R1 EQ Personal Info," and "R1 EQ Inquiry Letter."

46. The TransUnion dispute submissions were identified as "R1: TU," "R1 TU Personal Info," and "R1 TU Inquiry Letter."

47. At approximately 10:02 p.m. on June 15, 2026, multiple dispute letters accompanied by identification documents were recorded as mailed to Equifax and TransUnion.

48. The June 15, 2026 dispute submissions provided additional notice to Defendants concerning the specific categories of information Plaintiff identified for review.

49. On July 17, 2026, the dispute activity portal reflected that another set of dispute letters had been created and mailed to Equifax and TransUnion approximately one day earlier, indicating an approximate mailing date of July 16, 2026.

50. The July dispute submissions included additional general dispute letters, personal-information disputes, and inquiry disputes directed separately to Equifax and TransUnion.

51. The portal designated those submissions as "R2: EQ," "R2: TU," "R2: EQ Personal Info," "R2: TU Personal Info," "R2: EQ Inquiry Letter," and "R2: TU Inquiry Letter."

52. The dispute portal further reflected that multiple Equifax and TransUnion dispute letters accompanied by identification documents were mailed during that dispute round.

53. From March 2026 through July 2026, Plaintiff submitted at least five documented rounds of disputes to Equifax and TransUnion concerning information appearing within Plaintiff's consumer files.

54. The dispute submissions concerned account information, collection reporting, personal-identification information, credit inquiries, and information relating to consent or authorization.

55. Each dispute submission identified information appearing within Plaintiff's consumer reports and included information intended to assist Defendants in reviewing the disputed items.

**DEFENDANTS' RECORDS REGARDING PLAINTIFF'S DISPUTES**

56. Defendants maintain records relating to Plaintiff's disputes, including records showing when disputes were received, how disputes were categorized, what information was transmitted, what responses were received, and what actions were taken following receipt of Plaintiff's submissions.

57. Such records include, but are not limited to, dispute intake records, ACDV forms, e-OSCAR transmissions, furnisher communications, verification responses, internal notes, quality-control records, audit records, investigation procedures, and electronically stored information.

58. The procedures used by Defendants to process consumer disputes, including the information reviewed, systems utilized, communications conducted, and documentation considered, are maintained by Defendants as part of their business operations.

59. Defendants possess records identifying the procedures applicable to Plaintiff's disputes and the specific procedures applied to each dispute submission.

60. Plaintiff does not possess Defendants' internal dispute-processing records and cannot independently obtain records maintained by Defendants concerning the handling of Plaintiff's disputes.

61. Discovery is necessary to obtain Defendants' records concerning the processing, review, documentation, and disposition of Plaintiff's dispute submissions.

62. The records maintained by Defendants will establish the nature of the dispute procedures used, the information considered, the communications made, and the basis for any decisions concerning the disputed information appearing in Plaintiff's consumer files.

## CLAIMS FOR RELIEF

### COUNT I — VIOLATION OF 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

63. Plaintiff incorporates by reference paragraphs 1 through 62 as though fully set forth herein.

64. Defendants Equifax Information Services LLC and TransUnion LLC are consumer reporting agencies subject to the requirements of the Fair Credit Reporting Act.

65. The Fair Credit Reporting Act requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of the information concerning consumers that they prepare or maintain.

66. Defendants maintained and disseminated consumer reports concerning Plaintiff that contained information Plaintiff identified as inaccurate, incomplete, misleading, and/or unverifiable.

67. Plaintiff disputed information appearing within his consumer reports, including information relating to Fairwinds account number 748035XX and BMW account number 100433.

68. Plaintiff informed Defendants that the BMW account reporting reflected a repossession despite Plaintiff's contention that the account had been paid in full.

69. Plaintiff also informed Defendants of concerns regarding Fairwinds account number 748035XX and requested review of the information being reported.

70. Plaintiff submitted supporting documentation and identifying information concerning the disputed items.

71. The records maintained by Defendants concerning their procedures, review processes, documentation, and handling of Plaintiff's disputes will establish the procedures used by Defendants to prepare and maintain Plaintiff's consumer reports.

72. Defendants' failure to maintain reasonable procedures to assure maximum possible accuracy resulted in inaccurate information being prepared, maintained, and/or disseminated concerning Plaintiff.

73. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages including, but not limited to, harm to his credit reputation, loss of credit

9

opportunities, emotional distress, financial injury, and other actual damages.

74. Defendants' conduct was negligent and/or willful, entitling Plaintiff to relief pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II — VIOLATION OF 15 U.S.C. § 1681i(a)
### Failure to Conduct a Reasonable Reinvestigation of Disputed Information

75. Plaintiff incorporates by reference paragraphs 1 through 74 as though fully set forth herein.

76. The Fair Credit Reporting Act requires consumer reporting agencies, after receiving a dispute from a consumer concerning the completeness or accuracy of information contained in a consumer's file, to conduct a reasonable reinvestigation of the disputed information.

77. Plaintiff submitted written disputes to Defendants identifying information appearing in Plaintiff's consumer reports that Plaintiff disputed as inaccurate, incomplete, misleading, unauthorized, and/or unverifiable.

78. Plaintiff's dispute submissions included written explanations, identification documentation, and supporting materials concerning the disputed information.

79. Plaintiff submitted multiple dispute rounds to Defendants between March 2026 and July 2026 concerning account information, collection information, personal-identification information, credit inquiries, and authorization-related information.

80. Defendants maintain records showing how Plaintiff's disputes were received, processed, reviewed, transmitted, and resolved.

81. Those records include information concerning the procedures applied to Plaintiff's disputes, communications with furnishers, information reviewed, responses received, and the basis for any determinations concerning disputed information.

82. The evidence concerning the scope and nature of Defendants' reinvestigation activities is contained primarily within Defendants' business records.

83. Defendants' failure to conduct reinvestigations that complied with the requirements of the Fair Credit Reporting Act caused inaccurate or incomplete

10

information to remain within Plaintiff's consumer files.

84. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages.


## COUNT III — VIOLATION OF 15 U.S.C. § 1681i(a)(5)
### Failure to Delete or Modify Information That Could Not Be Verified

85. Plaintiff incorporates by reference paragraphs 1 through 84 as though fully set forth herein.

86. The Fair Credit Reporting Act requires consumer reporting agencies to delete or modify information that cannot be verified as accurate or complete following a reinvestigation.

87. Plaintiff disputed information appearing within his consumer reports and provided information identifying the disputed items.

88. Plaintiff disputed, among other information, the reporting associated with Fairwinds account number 748035XX and BMW account number 100433.

89. Plaintiff notified Defendants of the basis for his disputes and provided information supporting his position that the reporting required review.

90. Defendants maintain records concerning the verification process, communications with furnishers, and determinations made regarding the disputed information.

91. If Defendants were unable to verify disputed information as accurate and complete, the Fair Credit Reporting Act required appropriate correction, deletion, or modification of such information.

92. Plaintiff alleges that Defendants' failure to comply with these requirements caused inaccurate information to remain within Plaintiff's consumer reports.

93. Plaintiff suffered damages as a result.


## COUNT IV — VIOLATION OF 15 U.S.C. §§ 1681i(a)(6) AND 1681i(a)(7)
### Failure to Provide Required Investigation Information

94. Plaintiff incorporates by reference paragraphs 1 through 93 as though fully set forth herein.

95. The Fair Credit Reporting Act requires consumer reporting agencies to provide consumers with information regarding the results of reinvestigations and, upon request, a description of the procedures used to determine the accuracy and completeness of disputed information.

96. Plaintiff disputed information maintained by Defendants and requested review of those disputed items.

97. Defendants maintain records identifying the procedures used in responding to Plaintiff's disputes, including policies, procedures, systems, communications, and records reviewed.

98. Plaintiff seeks disclosure of those procedures and records to determine the actions taken in response to Plaintiff's disputes.

99. Defendants' failure to provide information required by the Fair Credit Reporting Act caused Plaintiff harm and prevented Plaintiff from understanding the basis for the continued reporting of disputed information.

## COUNT V — WILLFUL AND/OR NEGLIGENT NONCOMPLIANCE WITH THE FAIR CREDIT REPORTING ACT

100. Plaintiff incorporates by reference paragraphs 1 through 99 as though fully set forth herein.

101. Defendants received multiple written dispute submissions from Plaintiff over a period of several months.

102. Plaintiff's disputes repeatedly identified information appearing within his consumer reports and provided information concerning the basis for those disputes.

103. Defendants maintained records concerning Plaintiff's disputes and the procedures used to process them.

12

104.    To the extent Defendants failed to comply with the requirements of the Fair Credit Reporting Act, such failures were negligent and/or willful.

105.    Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1681o and, where applicable, statutory and punitive damages pursuant to 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants Equifax Information Services LLC and TransUnion LLC and award:

A. Actual damages in an amount proven at trial;

B. Statutory damages where authorized by the Fair Credit Reporting Act;

C. Punitive damages for willful violations of the Fair Credit Reporting Act;

D. Costs of this action;

E. Appropriate equitable relief requiring correction of inaccurate consumer reporting;

F. Such other and further relief as the Court deems just and proper.

Respectfully submitted,


/s/ Branden Wabe
Branden Wabe, Plaintiff Pro Se

208 NE Monroe Circle N #304
St. Petersburg, Florida 33702

Telephone: 727-776-8999
Email: Brandenwabe@gmail.com

13